BARTOLA COLLAZO ET AL., Plaintiffs and Appellants, *v.* EUDOSIA MOURIÑO ET AL., Defendants and Appellees.

No. 6769.   Argued March 29, 1937.—Decided June 11, 1937.

*Ramón G. Goyco* and *Angel Fiol Negrón* for appellants.   *Leopoldo Tormes García* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiffs, as alleged heirs of Pedro Juan Herrera y Collazo, brought this action to cancel a certain entry in the civil registry and to vacate a certain declaration of heirship in favor of the defendant, Pedro Juan Herrera y Mouriño.

Herrera Collazo was twice married.  He obtained a divorce from his first wife June 29, 1923 and married again August 27, 1923.  In January 1924, Herrera Collazo recorded in the civil registry the birth of a child, Pedro Juan Herrera y Mouriño, as his legitimate son by his second wife, Eudosia Mouriño.  The child was said to have been born on November 25, 1923.

Herrera Collazo died October 24, 1930.  His widow, Eudosia Mouriño, obtained a declaration of heirship dated November 22, 1930, whereby Pedro Juan Herrera Mouriño was decreed to be the sole and universal heir.  Plaintiffs filed

their original complaint in October 1931. In a third amended complaint, filed October 3, 1932, plaintiffs alleged that the mother of Pedro Juan Herrera y Móuriño was Manuela Sánchez Echevarría, a married woman, and that at the time of conception, Herrera Collazo was the husband of Patria Montalvo, his first wife. Defendants pleaded want of facts sufficient to constitute a cause of action, estoppel, and prescription. The district judge dismissed the action because, in his opinion, the action was barred and the complaint failed to state facts sufficient to constitute a cause of action. Sections 113 to 117, inclusive, of the Civil Code (1930 ed.) read as follows:

"Section 113.—Legitimate children are those born 180 days after the marriage has been celebrated and before 300 days have passed after the marriage has been dissolved.

"Against legitimacy no other proof shall be admitted than the physical impossibility of the husband to use his wife within the first one hundred and twenty days of the three hundred days that have preceded the birth of the child.

"Section 114.—A child is also legitimate if born within 180 days after the celebration of the marriage, if the husband should not contest legitimacy.

"Section 115.—The legitimacy of a child may be disputed if born after 300 days from the dissolution of the marriage; but the child and its mother shall also have the right to prove the paternity of the husband in such case.

"Section 116.—Legitimacy can only be disputed by the husband or his legitimate heirs. The latter can only contest the legitimacy of a child in the following cases:

"1. If the husband has died before the termination of the period fixed for instituting his action in court.

"2. If he shall have died after presenting his action without having desisted from it.

"3. If the child was born after the death of the husband.

"Section 117.—The action to contest the legitimacy of the child shall be instituted within three months after the inscription of its birth in the registry, if the husband be in Porto Rico, or after six months if he should be abroad, reckoning from the time he has knowledge of the birth."

The children referred to in section 113 are the children of the wife referred to in that section, not the children of some other woman. 1 Manresa 509, 530 (5th Ed.); Sánchez Román, Vol. 5 (2) (2nd ed.) 966, 969 (note), 976.

If the action conferred upon the husband (and in certain enumerated circumstances upon his heirs) by section 116 can be brought only for the purpose of establishing the fact that the husband was not the father of his wife's children, that section can not be invoked as authority for the present action. If section 116 be broad enough to support an action by the heirs of a deceased husband to cancel the record entry of the birth of a child as the legitimate child of such husband and of his wife, because such child was in fact the child of another married woman, then the complaint herein fails to state facts sufficient to constitute a cause of action. The husband had not "died before the termination of the period fixed for instituting his action in court." He had not "died after presenting his action without having desisted from it." The child was not "born after the death of the husband."

As a matter of fact, however, appellants do not rely on section 116 as the basis of their action. They invoke the aphorism that "where there is a wrong there is always a remedy." In support of this theory of the case they cite *Garcia* v. *Garcia*, 18 P.R.R. 926 and *Alcaide* v. *Morales*, 28 P.R.R. 258. A perusal of the opinion in *Garcia* v. *Garcia* will suffice to distinguish that case from the case at bar. The first paragraph of the headnotes to *Alcaide* v. *Morales* reads as follows:

"A person has a right to sue for the annulment of the acknowledgment of a supposed natural child when the acknowledgment was the result of error, deceit, intimidation, force, or other similar cause, and neither the rule of '*estoppel in pais*' or that of '*estoppel by laches*' prevents the exercise of such right, but it is barred by limitation after fifteen years. The evidence in such a case must be sufficiently strong to fully convince the court that an annulment of the acknowledgment is the only action demanded by justice."

*Heirs of Cruet* v. *Mandés*, 35 P.R.R. 757, although not cited by either of the parties is somewhat more in point as to the facts, although the majority opinion did not decide one of the questions discussed by Mr. Justice Wolf in a concurrent opinion and by Mr. Justice Aldrey in a dissenting opinion. From the majority opinion we take the following extract:

" . . . The complaint herein was filed on December 19, 1924. It alleged that the defendant, Isabelino Mandés, on March 14, 1914, personally appeared in the civil registry of Guayama and placed upon record the birth of a child named Iris as the legitimate daughter of himself and of his wife, Victoria Cruet Colón, and as having been born on the 17th of February of the same year; that at the time of making the said entry the said Mandés stated and caused to appear therein, among other things, that the maternal grandparents of the child were José Cruet and Ramona Colón; that the said Mandés did this knowing that the said child was not the legitimate daughter of himself and of his wife, Victoria Cruet, as was made to appear; and that José Cruet and Ramona Colón were not the maternal grandparents, inasmuch as the said Mandés and his wife, Victoria Cruet, had no children living at that time. Plaintiffs also allege upon information and belief that the child Iris was the natural daughter of one Antonia Rivera and of an individual named Juan Montero, having been born in a house or tenement house, the property of Bautista Soto in the Barrio of Guamaní at a date prior to that named in the civil registry; that the child Iris was rescued by Victoria Cruet, wife of Mandés, at the moment when the mother, being insane, was attempting to drown it in the river Guamaní; that Victoria Cruet died without issue in Guayama on August 8, 1920, being survived by her parents, José Cruet and Ramona Colón; that the actual mother of the child Iris died in Guayama on May 15, 1913; that José Cruet also died in Guayama on June 14, 1922, leaving property and a last will and testament wherein plaintiffs and the said Victoria Cruet were designated as his sole and universal heirs; and that the plaintiffs have to divide the inheritance of their said ancestor, José Cruet y Arroyo, and they have not been able to do it because in order to do so it is necessary to determine this case in court to obtain the annulment of the status of the child Iris as legitimate daughter and descendant of the spouses Isabelino Mandés and Victoria Cruet, on the ground that the entry made of her birth

as legitimate daughter of the spouses Mandés–Cruet is untrue and based on no legal cause; and if such entry should subsist the child Iris would be entitled to the inheritance of her alleged grandparent, José Cruet y Arroyo, in representation of her alleged legitimate mother, Victoria Cruet, both deceased, and the said entry prejudices the right of the widow Ramona Colón, legitimate mother of Victoria Cruet, who is her heir by force of law, as it also prejudices the rights of the other legitimate relatives of José Cruet y Arroyo, as appears from the facts hereinbefore alleged.''

Mr. Justice Wolf in his concurring opinion said:

''Likewise, I largely base my concurrence on another consideration, only partially set forth in the main opinion. Her supposed father being alive and having made a record in her favor as a legitimate child, none of the complainants had any interest or capacity to attack the status of Iris Mandés. Mandés, to my mind, was the only living person who had a right to bring such an action. The complainants were strangers in law.''

Coming to this point Mr. Justice Aldrey in his dissenting opinion said:

''In fine, we should assert that there is legal nexus between the plaintiffs and the defendants, a fact which was denied in the concurring opinion, because if the child Iris is not the legitimate daughter of the spouses Mandés–Cruet, her appearing as such would impair the rights of José Cruet Arroyo's heirs, inasmuch as it would reduce the hereditary share of each heir by having to allot to the child a share equal to theirs, and as wherever there is a wrong there is always a remedy, as this court asserted in the case of *Garcia* v. *Garcia*, 18 P.R.R. 926, a case which is very similar to the one under consideration inasmuch as in the former case a child was seeking to annul the registration of its birth in the civil registry as the illegitimate son of a man who was not his father, but who recognized him as such through his affection for him, and in which case the district court was also laboring under the idea that the recognition or acknowledgment of said minor as the son of the defendant could not be assailed.''

Mr. Justice Aldrey in another part of his dissenting opinion said:

"From the documentary evidence also appears as proved the death of José Cruet Arroyo, which occurred on the 15th of May, 1913, and from his will that the plaintiffs herein are his heirs. The assessment made by the Treasurer of the property left by José Cruet Arroyo aggregates $10,050, and as half of this amount is community property belonging to the widow, there will be a remnant of $5,025 to be divided among her six children, and if Iris should be the legitimate daughter of Victoria, then that amount would have to be divided among seven heirs, the sum of $717 to be allotted to each, should there be no reduction of the inheritance."

In the instant case, plaintiffs do not allege that Pedro Juan Herrera Collazo had any property at the time of his death. They do not allege that Domingo Herrera, who died sometime after the death of his son, Pedro Juan Herrera Collazo, left any property. They do not even allege that Bartola Collazo, the mother of Pedro Juan, has any property or is likely to acquire any property which the other plaintiffs herein might be called upon to share with the defendant, Pedro Juan Collazo Mouriño, in case the plaintiff, Bartola Collazo, should die during the lifetime of her coplaintiffs. They do not allege any pecuniary interest in the cancellation of the entry in the civil registry or in the setting aside of the declaration of heirship.

At the threshold of the trial, the district judge with the consent of both parties took under advisement the questions of law argued and submitted at that time and dismissed the action after a trial on the merits without passing upon the evidence. There is nothing in the testimony for plaintiffs which discloses any pecuniary interest in their effort to deprive the child, Pedro Juan Herrera y Mouriño, of his present status as a legitimate son and to brand him as an adulterous bastard. Conceding, for the sake of argument, that Mr. Justice Aldrey was right in the Mandés case, the grounds upon which his dissenting opinion was based do not exist in the case at bar.

712

■ Where there is no wrong to be redressed, no invasion of any right possessed by plaintiffs, no right to demand the relief sought, neither the legal maxim *ubi jus, ibi remedium* nor its equivalent in equity practice can be successfully invoked.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.